[No. A028055. First Dist., Div. Two. May 15, 1987.]

In re the Marriage of MYRTLE MARIE and JONATHAN ESMONDE CHAPMAN.
MYRTLE MARIE CHAPMAN, Appellant, v.
JONATHAN ESMONDE CHAPMAN, Respondent.

COUNSEL

Roberta Nicol Dempster, De Goff & Sherman and Richard Sherman for Appellant.

Richard Critchlow for Respondent.

OPINION

**KLINE, P. J.**—This appeal is from the judgment dissolving the parties' second marriage to each other and awarding appellant spousal support of $500 a month for a period of one year. The support order was based on consideration only of the second marriage of three and a half months duration, without regard to the prior marriage of nineteen years. Appellant contends that the trial court erred in failing to consider the parties' first marriage and abused its discretion in ordering an insufficient amount of support. We agree with the first of these contentions and remand for reconsideration of the support order.

FACTS

The parties first married on July 23, 1960. Appellant obtained an interlocutory judgment of dissolution on June 5, 1979, and a final judgment of dissolution on June 9, 1981. At the time the interlocutory judgment was entered, the parties had reconciled but decided to go through with the divorce to "clean out the emotional garbage" and then remarry.

During the three years following the interlocutory judgment the relationship was characterized by brief separations and reconciliations. Shortly after obtaining the interlocutory decree in 1979, appellant moved to Portland, Oregon, to live with respondent. Problems began after six months and she moved back to California in January 1980. Respondent came to California about three weeks later and the couple reconciled in February. At the end of May they separated for about a month, then moved in together again. At this point they decided to finish off the divorce and "start off brand new." Appellant obtained the final judgment of dissolution in June 1981, receiving an open-ended spousal support award of $625 per month. The parties separated again in August 1981, began to see each other in February 1982, and remarried on April 28, 1982. They separated for the last time in August 1982. By appellant's description, the couple's problems derived from respondent's drinking; things went well when he was not drinking.

At the beginning of the first marriage the parties' standard of living was moderate; by the end of that marriage it had improved and they owned a home worth about $80,000. During this marriage appellant worked sporadically at sales or light clerical jobs. Her longest period of work was three and a half months, and the highest wage she received was $5 an hour. She testified respondent did not want her to work and several times asked her to quit jobs.

After entry of the interlocutory judgment in the first marriage, appellant worked selling flowers for about six months, on an "as needed" basis. Her

hours ranged from 8 to 48 per week, and her pay was $4 per hour. She later obtained a job answering telephones for $5.35 an hour, 25 hours a week, but was forced to leave this position when she ruptured two discs in a fall. In November or December 1983 she worked for three weeks as a washroom attendant, at $5 an hour; muscle spasms in her back prevented her from continuing.

At the time of the present hearing appellant had been hospitalized several times for her back injury and had been confined to bed for 30 to 45 days at a time. She also had a thyroid condition requiring daily medication, had arthritis, and was experiencing menopause. Her monthly income consisted of $280 from state disability insurance, due to end in 10 months, and $400 temporary support from respondent, which appellant did not always receive on time. This income was insufficient to meet her monthly expenses of $1,432, which respondent stipulated were reasonable. She had borrowed $9,000 to $10,000 from her mother for living expenses and $10,393 from a friend to secure a loan to purchase the trailer in which she resided.

When the parties separated in August 1982, respondent began to live with his girlfriend, Deanna Peterson, who held herself out as Deanna Chapman and whom respondent planned to marry. Peterson, a wealthy woman, fully supported respondent, paying all his expenses, including his legal fees for the dissolution action, temporary support payments and Christmas money for appellant, and some of his adult children's expenses.

At the time of the parties' separation, respondent was vice president of Coldwell Banker Insurance Company, earning about $40,000 a year, plus an expense account, bonuses, and fringe benefits including use of a company-owned Mercedes Benz. This position was terminated in July 1983. From July 15, 1983, to October 31, 1983, respondent was employed by Advanced Safety Applications, Inc. (Advanced Safety) and by Chapman & Associates Insurance Brokers. He was president of both businesses and one of the two members of the board of directors of Advanced Safety. His intended salary from each company was $1,500 per month, but he was not actually paid. Peterson worked for both companies; she received a salary of $1,000 a month from Advanced Safety and deferred her salary of $1,500 a month from Chapman & Associates. At the time of trial, Advanced Safety was a functioning corporation but was no longer doing business.

At the time of trial respondent was vice president and accounts producer for Consolidated Pacific Insurance Brokers, Inc. (C.P.I.) which was incorporated on June 5, 1983, and commenced doing business on November 1, 1983. Respondent had been the chief executive officer and president of the corporation until January 1, 1984, when the corporation was restructured. Since

January 1, Peterson had been president and chief executive officer; she had previously been vice president. The corporation had two other officers and respondent was the sole member of the board of directors. Respondent's salary of $1,500 per month was deferred; Peterson's salary of $1,500 was sometimes paid and sometimes deferred.

Respondent enjoyed the use of a Mercedes Benz owned by Peterson and a Datsun owned by Advanced Safety. Gas for the Mercedes was paid for by C.P.I.; respondent would borrow cash from Peterson, who would then claim an expense from the company. Respondent's income and expense declaration listed monthly expenses of $1,075 but these expenses were actually paid by Peterson.

## DISCUSSION

In determining the issue of spousal support, the trial court limited itself to a view of the marriage as one which lasted only three and a half months, and accordingly ordered a brief period of support. Appellant urges that the court should have considered the entire length of the parties' marital relationship and ordered spousal support of unlimited duration. After a lengthy marriage, it is an abuse of discretion for the trial court to order that spousal support shall terminate on a specified date "unless the record clearly indicates that the supported spouse will be able to adequately meet his or her financial needs at the time selected for termination of jurisdiction." (*In re Marriage of Morrison* (1978) 20 Cal.3d 437, 453 [143 Cal.Rptr. 139, 573 P.2d 41]; *In re Marriage of Vomacka* (1984) 36 Cal.3d 459, 467 [204 Cal.Rptr. 568, 683 P.2d 248].)[1]

Civil Code section 4801 gives the trial court broad discretion to determine a just and reasonable spousal support order. The statute lists a number of circumstances to be considered in fixing the amount and duration of support, including the earning capacity, needs, obligations, and assets of each spouse; the duration of the marriage; the ability of the supported spouse to engage in gainful employment without interfering with the interests of depen-

---

[1]The spousal support order in this case provided for termination after one year unless either party moved for an extension before the end of that period. The order effectively provided for absolute termination of jurisdiction, however, because the ground upon which appellant would seek to extend support—length of the parties' first marriage—would not constitute a material change of circumstances and therefore could not be the basis of a modification. Where a support order reflects an expectation that the supported spouse will become self-supporting by the termination date and this does not occur, there is a change of circumstances which may support modification. (*In re Marriage of Pekar* (1985) 173 Cal.App.3d 367, 371-372 [218 Cal.Rptr. 823].) Here there is no indication that the court anticipated appellant becoming able to support herself, but only that the court felt constrained to limit duration of the support order because of the brevity of the second marriage.

dent children in that spouse's custody and the time required to acquire appropriate education, training and employment; the age, health and standard of living of the parties; and *any other factors which the court deems just and equitable.* (Civ. Code., § 4801, subd. (a).) The court may consider " ' "practically everything which has a legitimate bearing upon the present and prospective matters relating to the lives of both parties." ' " (*In re Marriage of Rosan* (1972) 24 Cal.App.3d 885, 893 [101 Cal.Rptr. 295], quoting *Hall* v. *Hall* (1954) 42 Cal.2d 435, 442 [267 P.2d 249].)

In the present case, the trial court considered a number of circumstances which militated in favor of a support award. The court found that respondent had a net effective income of at least $1,500 per month and a proven earning capacity of about $40,000, that he was living at a level commensurate with his earning capacity, and that he was being fully supported by Ms. Peterson. Appellant, by contrast, had great needs and virtually no income: she was in poor health and faced future surgery, had been a housewife during the first marriage, and had held only marginal, sporadic employment since.

Weighing against these factors was the court's view of the marital relationship as one of brief duration. In taking this view, the court relied on cases holding that a support obligation ceases upon remarriage of the supported spouse, even if the subsequent marriage is annulled. (*Fry* v. *Fry* (1970) 5 Cal.App.3d 169 [85 Cal.Rptr. 126]; *Sefton* v. *Sefton* (1955) 45 Cal.2d 872, 876-877 [291 P.2d 439]; *Berkely* v. *Berkely* (1969) 269 Cal.App.2d 872, 875 [75 Cal.Rptr. 294].) Stating that the cases do not distinguish remarriage to the former spouse, the court here refused to consider the spousal support award in the prior dissolution or to "tack on" the length of the prior marriage.[2]

■ The principle underlying the annulment cases upon which the trial court relied does not apply to the situation of remarriage of the same parties. When a supported spouse marries a third party, the former spouse is released from any obligation of support and the new spouse takes on the obligation of support which accompanies marital status. (Civ. Code., § 242.)[3] The theory of the annulment cases is that even though the remarriage is declared void or voidable, the supporting spouse is entitled to rely upon the apparent

---

[2]During the trial, the court allowed testimony concerning the parties' prior relationship over respondent's objection, on the theory that the parties' lengthy marriage, reconciliation and remarriage could be considered as just and equitable factors bearing on the issue of spousal support. Thus, it appears that the court was initially inclined to adopt appellant's view of the case, but later felt constrained not to do so.

[3]Civil Code section 242 provides: "Every individual shall support his or her spouse and child, and shall support his or her parent when in need. The duty imposed by this section shall be subject to the provisions of Sections 196, 206, 246, 4700, 4700.1, 4700.5, 4700.7, 4700.9, 4801, 5131, and 5132."

remarriage and recommit assets previously chargeable to spousal support. (*Fry* v. *Fry, supra,* 5 Cal.App.3d at p. 172; *Sefton* v. *Sefton, supra,* 45 Cal.2d at pp. 876-877.) While both parties to the first marriage may be innocent of wrongdoing, the one who voluntarily remarries is the more active and must bear the loss occasioned by the annulment. (*Fry* v. *Fry, supra,* at p. 172; *Sefton* v. *Sefton, supra,* at p. 877.)[4] Where former spouses agree to remarry each other, however, the supporting spouse is not an inactive third party but an equally active participant. That spouse never loses the obligation to support the other; the remarriage simply substitutes an obligation of marital support for the obligation imposed in the prior dissolution.

In any event, appellant does not seek to reinstate the support obligation based in the parties' first marriage but to have the court consider the entire length of the parties' marital relationship in determining a support order in the present dissolution. On this issue, the annulment cases are simply inapposite.

In the recent case of *In re Marriage of Bukaty* (1986) 180 Cal.App.3d 143 [225 Cal.Rptr. 492], parties who divorced after a 19-month marriage had previously lived together for some 27 years and still earlier had been married for 12 years. (180 Cal.App.3d at p. 145.) The trial court refused to hear evidence of the couple's prior relationship and ordered support for a period of three years. (*Id.,* at pp. 146-147.) The appellate court affirmed, holding that because the Family Law Act does not apply to a nonmarital relationship, a right to support attributable to the period of cohabitation could not be asserted in a proceeding under that act. (*Id.,* at p. 148.) The wife's attempt to analogize the relationship to a lengthy marriage was rejected because the legislative intent in the Family Law Act was to protect marital status by granting certain rights and privileges only to those who entered such status. (*Id.,* at p. 149.)

The policy behind *Bukaty* does not preclude recognition of a couple's prior *marital* relationship. Here, parties whose relationship was apparently characterized by repeated separations and reconciliations were married for nineteen years, divorced for three years, and remarried for three and a half months. In all this period, their longest physical separation was six months. As the parties' prior relationship was predominantly one fully recognized by the Family Law Act,[5] it could be considered as a factor bearing on respon-

---

[4]*In re Marriage of Weintraub* (1985) 167 Cal.App.3d 420 [213 Cal.Rptr. 159] indicates that the rule of these cases is primarily justified by the active role of the supported spouse as compared to the supporting spouse. In that case, the court held that spousal support could be reinstated after annulment of a marriage obtained by force, because a supported spouse in such a situation does not enter the subsequent marriage voluntarily.

[5]We *recognize that the parties in Bukaty had previously been married* (180 Cal.App.3d at p. 145) and that the parties in the present case cohabited between their marriages. However, the *Bukaty* decison does not discuss the prior marriage, focusing primarily on the lengthy period of cohabitation.

dent's spousal support obligation without attaching rights and privileges to a relationship the Legislature did not intend to protect.

The principal factor that differentiates the situation in the present case from that in *Bukaty* is the brevity of the interlude between the end of the first marriage and commencement of the second. While the relationship in *Bukaty* could be (and was) viewed as primarily one of cohabitation, the relationship here was primarily marital. Indeed, unlike *Bukaty,* there was no time after their initial marriage 27 years ago, including the brief period between their marriages, when respondent husband had no legal obligation to support appellant wife.

Considering the collective length of their marital relationships, the relative brevity of the interval between them, and the uninterrupted and continuing nature of respondent's legal responsibility to support appellant, it would be both unreal and unjust to preclude judicial consideration of the entire marital history of the parties. ■ The obligation of support derives from the enduring nature of a couple's relationship, which is generally measured by the length of their marriage. Accordingly, while duration of the marriage is not the only factor to be considered in fashioning a support award (*In re Marriage of Neal* (1979) 92 Cal.App.3d 834, 846 [155 Cal.Rptr. 157]), it is a substantial one (*In re Marriage of Bukaty, supra,* 180 Cal.App.3d 143, 149): All else being equal, the obligation will be comparatively short after a brief marriage and lengthy after a long marriage.[6] ■ The factor which most frequently warrants a lengthier period of support—the fact that the supported spouse devoted years to homemaking and childrearing and thereby gave up the opportunity to acquire marketable skills—appears to to be present in this case. Defining the rights and duties of the parties without regard to this factor ignores the reality of their life together and penalizes appellant for trying once more to make the marriage work.

Policy considerations, too, impel us to reject a rule that a couple's remarriage to one another necessarily obliterates any connections between their former relationship and their present support obligations. If only the present marriage could be considered in awarding support, a supporting spouse would have an incentive to convince the supported spouse to reconcile and remarry, only to quickly divorce and be free of the burden of support stem-

---

[6]There is no requirement that the period of support bear any particular relationship to the length of the marriage (*Edwards* v. *Edwards* (1975) 52 Cal.App.3d 12, 15 [124 Cal.Rptr. 742]), and factors other than duration of the marriage may affect the generalization stated in the text. Where both spouses in a lengthy marriage are or will soon be self-supporting, there may be little or no support awarded; in some circumstances, an indefinite award may follow a relatively brief marriage. (*In re Marriage of House* (1980) 106 Cal.App.3d 434, 437-438 [165 Cal.Rptr. 145]; ; *In re Marriage of Aufmuth* (1979) 89 Cal.App.3d 446, 459 [152 Cal.Rptr. 668].)

ming from a long marriage. Alternatively, if a marriage was in difficulty but not necessarily at an end, a spouse could minimize potential support obligations by obtaining a divorce and then remarrying. In either case, the rule would serve to abuse the institution of marriage and defeat the strong policy of this state that a spouse in need of support at the end of a long marriage be supported by the other for as long as necessary. (*In re Marriage of Vomacka, supra,* 36 Cal.3d 459, 467; *In re Marriage of Morrison, supra,* 20 Cal.3d 437, 452-453.)

The trial court in this case was correct that the support award had to be based in the present marriage; the obligation of support imposed in the parties' first dissolution ceased upon their remarriage. (Civ. Code., § 4801, subd. (b).) In some limited circumstances, however, the parties' past relationship may have a just and equitable bearing on the parties' present obligations. (Civ. Code., § 4801, subd. (a)(8).) Where, as here, longtime spouses divorce and choose to quickly remarry, they resume a relationship which the law of this state seeks to protect and which has been a primary force in shaping their current lives. In such cases, courts may recognize the resumption of that relationship as restoring rather than terminating their long-standing obligations to one another. We hold that when a trial court determines the amount and duration of spousal support it is not foreclosed from considering, under Civil Code section 4801, subdivision (a)(8), the length of, and orders flowing out of, a previous marriage between the same parties.

In its statement of decision, the trial court specified that the spousal support order regarding the prior dissolution could not be considered in the present proceeding. The court misread the scope of its discretion, and this narrow reading was error. Clearly, the broad "just and equitable" language of Civil Code section 4801, subdivision (a)(8), permits the court to consider such an order.

As the case must be remanded for reconsideration of both the amount and the duration of support in accordance with the views expressed above, we need not determine whether the amount of the award made was an abuse of discretion.[7] In additition to her costs on appeal, appellant shall be allowed a reasonable sum for attorney fees on appeal, as we believe an adequate

---

[7]Considering that at the end of the first marriage appellant was awarded monthly spousal support of $625, at a time when she apparently did not suffer her present disabilities and respondent enjoyed fewer financial resources, it appears that the court below was influenced by the brevity of the subsequent marriage in fixing the amount as well as the term of the present award. If, upon remand, the trial court believes consideration of the duration of the first marriage and the nature of that relationship warranted a larger award at the time the present award was made, the court should grant appellant a new award made retroactive to that date. (*In re Marriage of Jacobs* (1981) 126 Cal.App.3d 832 [179 Cal.Rptr. 169].)

showing of need has been made. (Civ. Code., § 4370; *In re Marriage of Jacobs, supra,* 126 Cal.App.3d 832, 836.)

Rouse, J., and Smith, J., concurred.