Brenda M. BUTLER, Appellant,

v.

Kurtis BUTLER, Respondent.

No. 64062.

Missouri Court of Appeals,
Eastern District,
Division One.

March 8, 1994.

Michael B. Stern, St. Louis, for appellant.

Christine Miller Hendrix, O'Fallon, for respondent.

CRIST, Judge.

Wife appeals the maintenance and property division portions of the trial court's decree of dissolution. We reverse and remand.

This is the dissolution of the second marriage of Husband and Wife to each other. Husband and Wife were previously married on April 21, 1979. That first marriage ended in dissolution on September 26, 1988. The decree of dissolution for that marriage incorporated Husband and Wife's separation agreement. In their agreement, both Husband and Wife waived maintenance. They further agreed to· sell the marital home, a 1982 GMC truck, pool table, lawn mower, tiller, snow blower and attachments, satellite dish, and cement mixer. They agreed to accept $86,500 for the marital home. Out of the proceeds of above sale, Wife would receive the first $32,000, Husband would receive the next $5,000, and Wife would receive any remainder. Wife was permitted to live in the marital home until its sale while Husband continued to make the mortgage payments. The parties agreed they had already divided the remaining personal property to their satisfaction. Wife and Husband agreed to split their 1988 federal tax refund. Husband received a 1985 GMC Starcraft van, while Wife received a 1986 Trans Am. Husband further received his profit sharing fund and pension fund from his work.

Husband and Wife married each other for the second time on April 22, 1989. Upon their remarriage, Husband and Wife lived in their prior marital home. Husband remained employed at True Manufacturing Co. Wife was unemployed and had received Social Security disability income since 1971. After their second marriage, Wife became significantly more ill. She was diagnosed with lupus and also began dialysis treatments for kidney problems. She also had a complete lung failure and heart problems. Wife testified these illnesses were a contributing factor in the break-up of the second marriage. Husband and Wife separated on April 3, 1992, and Wife subsequently filed her petition for divorce. Following this separation, Wife's mother helped her purchase a mobile home by providing her with a downpayment and co-signing the loan. At the time of trial, Wife was 51 years old and Husband was 52 years old.

The trial court dissolved their marriage on May 14, 1993. The court found Wife's income to be $535 per month ($6,420 per year) in Social Security disability income. It further found she had been receiving Social Security disability since 1971. The court found Husband's income to be the following: (1) 1989—$46,033.84; (2) 1990—$47,420.78; (3) 1991—$48,464.20; and (4) 1992—$49,-450.87.

The trial court denied Wife maintenance. It found Husband had the following separate property: (1) $6,000 savings; (2) the value of his Profit Sharing Retirement Plan prior to April 22, 1989, (Evidence in the second divorce establishes this plan contained approximately $17,171 at the end of 1988); and (3) all property distributed to him pursuant to the prior dissolution decree. Wife's separate property was determined to be all property distributed to her in the prior decree.

The court divided the remaining property as follows:

| Wife | | Husband | |
|---|---|---|---|
| Inheritance | $ 402.84 | Inheritance | $ 402.83 |
| 401(k) | $1,168.52 | 401(k) | $1,168.51 |
| Savings Plan | 640.78 | Savings Plan | 640.77 |
| Profit Sharing<br>(½ since 4–22–89) | ——* | Profit Sharing<br>(½ since 4–22–89) | ——* |
| Personal Prop. | ——* | Personal Prop. | ——* |
| ½ Butler money | ——* | ½ Butler money | ——* |
| Mobile home (& debt) | ——* | Boat & motor | ——* |
| | | 1993 GMC (& debt) | ——* |

\* Court placed no valuation on this item.

---

The trial court also ordered Husband to pay $3,000 of Wife's attorney's fees.

■ On appeal, Wife's first two points challenge the denial of maintenance. In denying maintenance, the court specifically found Wife had sufficient property, including her premarital separate property, and income to meet her reasonable needs. The court also relied upon the fact Wife had been disabled throughout her first marriage to Husband and was receiving disability income then, yet had still waived maintenance in the separation agreement and decree dissolving the first marriage. The court further relied upon the short duration of the second marriage, only three years.

Wife maintains the evidence clearly shows she was entitled to receive maintenance pursuant to § 452.335, RSMo Supp.1993, and the trial court failed to follow its express language. Section 452.335.1 provides in pertinent part:

... the court may grant a maintenance order to either spouse, but only if it finds that the spouse seeking maintenance:

(1) Lacks sufficient property, including marital property apportioned to him [or her], to provide for his [or her] reasonable needs; and

(2) Is unable to support himself [or herself] through appropriate employment....

■ The trial court erred in finding Wife had sufficient property and income to meet her reasonable needs. The record shows Wife was totally disabled and incapable of work. Wife introduced her statement of income and expenses maintaining monthly expenses of $2,778. Husband introduced no evidence controverting these expenses. The trial court found Wife's income was $535 per month. Therefore, Wife's claimed monthly expenses exceeded her income by $2,243. However, the trial court determined Wife could further rely upon her separate property and marital property apportioned to her to meet her reasonable needs. Wife's separate property primarily consisted of property she received in the prior divorce. That property was minimal except for Wife's right to receive the first $32,000 after the sale of the marital home and miscellaneous personal property. At trial, however, Husband admitted Wife would never receive the full $32,000, and he believed she would receive approximately $5,000 or $10,000. Even if Wife did receive the full $32,000, annual investment income at an ample rate of 8% would still leave Wife far short of her needs. Wife is not required to deplete her assets before being entitled to maintenance. *Wallace v. Wallace*, 839 S.W.2d 354, 357[7] (Mo.App. 1992). In addition, the marital property apportioned to Wife consisted only of approximately $2,000 and the mobile home she purchased after their separation. Wife testified she borrowed the downpayment for that mobile home from her mother. The evidence indicates Wife has little or no equity in the mobile home.

■ In denying maintenance, the trial court also relied upon Wife's prior waiver of maintenance after Wife and Husband's first marriage to each other ended in dissolution. At that time, both Wife and Husband waived maintenance. The court stated Wife re-

ceived a substantial award of real and personal property in the first dissolution in exchange for her waiver of maintenance. At that time, Wife also received Social Security disability income. Therefore, the court found her physical condition had not substantially changed since the prior waiver, even though she had been diagnosed with additional medical problems.

Missouri law indicates a party may waive the right to receive maintenance. *See, Schumann v. Schumann,* 812 S.W.2d 541, 544[5] (Mo.App.1991); *Bathon v. Bathon,* 741 S.W.2d 100, 102[1] (Mo.App.1987). Therefore, if Wife had waived her right to receive maintenance at some point during the *second* dissolution proceedings, the court could properly deny maintenance. However, here, the trial court relied upon Wife's waiver in her *first* dissolution from Husband to preclude her request for maintenance following a *second* dissolution. No authority exists within Missouri law for this holding. Indeed, waiver is the intentional relinquishment of a known right. *Shapiro v. Shapiro,* 701 S.W.2d 205, 206[2] (Mo.App.1985). Wife could not intentionally relinquish maintenance for a marriage she did not know would even exist. Further, Husband and Wife's remarriage created a new obligation of support. *See, e.g., Herzog v. Herzog,* 761 S.W.2d 267, 268 (Mo.App.1988); *Cf. Higgins v. Higgins,* 154 Ariz. 87, 740 P.2d 508, 510 (1987) (remarriage of parties terminates prior maintenance provision of decree); *In re Marriage of Chapman,* 191 Cal.App.3d 1308, 237 Cal. Rptr. 84, 87–88[4] (1987) (remarriage of parties substitutes marital support obligation for that imposed by dissolution decree); *Noffsinger v. Noffsinger,* 95 Md.App. 265, 620 A.2d 415, 418 (1993) (resuming marital relations generally annuls a contract of separation); and *Henderson v. Henderson,* 764 P.2d 156, 158–59 (Okl.1988) (support provisions of divorce decree are subject to remarriage of parties giving rise to new contractual obligations of support). We find the prior waiver irrelevant in determining whether Wife should receive maintenance in this case. It may, however, be a relevant factor to consider under § 452.335.2 in determining an amount of maintenance and for what period of time. *Cf. Toomey v. Toomey,* 636 S.W.2d 313, 316–17[5] (Mo. banc 1982) (prior marriage between parties is a relevant factor under § 452.335.2)

The record shows Wife lacks sufficient income to meet her reasonable needs. It also shows uncontroverted evidence Wife is disabled and unable to pursue appropriate employment. Wife meets the criteria of the threshold test for an award of maintenance.

Consideration of the factors in § 452.335.2 also indicate they weigh in favor of Wife. Wife and Husband were married previously for about nine years. While the second marriage lasted only three years, other factors are present. In addition to those factors addressed in the prior discussion, Wife is completely disabled. She has lupus and also receives dialysis three times a week.

Also, Husband is clearly able to meet Wife's reasonable needs while also meeting his own needs. Husband listed monthly expenses of $1,769.26. At trial, he amended those expenses to include a truck payment of $488 per month and insurance payments of $775 per year ($64.58 per month). Therefore, in the most favorable view, Husband's expenses are $2,321.84 per month. The trial court found Husband's income in 1992 to be $49,450.87 annually or $4,120.91 per month. After deductions for taxes, Husband brings home approximately $3,200 per month. Therefore, Husband's take-home pay exceeds his reasonable needs by approximately $878. When this excess is compared with Wife's virtual inability to meet her needs, Wife should receive an award of maintenance.

Further, the suggestion by the trial court that an extreme disparity existed in the first dissolution property settlement is exaggerated. While Wife was to receive the first $32,000 of the sale of the marital home and other personal property, Husband received his entire pension plan, which at the end of 1988 was worth about $17,171. He also received the next $5,000 from the sale. Further, Husband admitted Wife would receive only $5,000–$10,000 from the sale.

Finding an abuse of the trial court's discretion regarding the award of maintenance, we reverse and remand to the trial court and order it to enter an award of maintenance to

Wife in a sufficient amount after considering all relevant factors pursuant to § 452.335.2.

■ In Point III, Wife avers the trial court erred in awarding her one-half "of any money received" for reimbursement of funeral costs of Husband's father. During their second marriage, Husband's father died. At that time, Husband used marital funds to pay the entire $4,000 funeral bill. Husband's brother, Keith Butler, stated he would try to pay Husband one-half of the expenses. He did pay about $1,000. In dividing the marital property, the trial court found: "[Wife] shall receive as her sole and separate property, one-half (½) of any money received from Keith Butler as reimbursement for funeral costs for the father of [Husband] and Keith Butler, if any." Wife contends this portion of the decree is so vague and indefinite as to be unenforceable and asks this court to remand for clarification.

■ Generally, a judgment must be certain and definite in amount or it is void and unenforceable. *Glassberg v. Obando,* 791 S.W.2d 486, 488 (Mo.App.1990). However, a dissolution of marriage decree may still be enforceable if it can be made certain by a motion and hearing to determine the exact amounts due by ministerial computation or evidence, so long as a subsequent hearing is not required to determine the decree's meaning. *Echele v. Echele,* 782 S.W.2d 430, 436[1] (Mo.App.1989); *See also, Gardner v. Gardner,* 830 S.W.2d 559, 562[6] (Mo.App.1992); *Gable v. Gable,* 816 S.W.2d 287, 290[1] (Mo.App.1991).

The specific amount due under this judgment is uncertain and vague. It is unclear whether Husband has an obligation to pay any funds. Further, it leaves in Husband's hands the power to prevent Wife from receiving her share of the debt. Wife has no way of knowing when she may have a right to collect on the judgment or in what amount. The language is so amorphous as to be unenforceable. We reverse and remand for specificity by the trial court.

■ In Point IV, Wife argues the trial court erred in determining the $6,000 withdrawn from Commerce Bank was the separate property of Husband. On August 30, 1990, Husband withdrew $6,000 from the joint account of Wife and Husband. Husband testified the account was used to pay bills, while Wife testified it was a savings account. In any event, Wife testified she also placed money in the account during the second marriage. Husband testified he saved the $6,000 during the period of time between his first dissolution from Wife and their second marriage. Wife avers Husband transmuted the property into marital property by placing it in joint account.

■ Generally, property acquired before the marriage would be separate property. § 452.330, RSMo Supp.1993. However, placing it into a jointly titled bank account during the marriage may give rise to transmutation into marital property by gift. *Hankins v. Hankins,* 823 S.W.2d 161, 162[2, 3] (Mo.App.1992). Where Wife shows the account was jointly titled, Husband bears the burden of showing by clear and convincing evidence he did not intend the joint title to provide a gift to Wife. *Tracy v. Tracy,* 791 S.W.2d 924, 928[7] (Mo.App.1990).

The facts of the case at hand are unique. Husband did not transfer separate funds from his own account into one jointly titled after he and Wife were married. Rather, Husband placed the funds into a jointly titled account in the interim between the first marriage but before the second marriage. He stated Wife's name remained on the account from the first marriage and he never had it removed. However, Husband testified the remarriage was intended as a resumption of their former marriage. Therefore, we find retaining the account in both Husband's and Wife's names is evidence of Husband's donative intent. *Cf. Wilson v. Wilson,* 822 S.W.2d 917, 923[7] (Mo.App.1991). This is especially true where both commingling and joint title are present. *In re Marriage of Smith,* 785 S.W.2d 764, 767[2] (Mo.App.1990). Therefore, a presumption arose Husband intended the money as a gift to the marriage. Husband presented no evidence at trial of a contrary intent. The trial court erred in

finding the $6,000 was Husband's separate property and we reverse.

We reverse and remand on all points. On remand, the trial court must: (1) enter an award of maintenance for Wife in a sufficient amount after considering all relevant factors pursuant to § 452.335.2; (2) specify the exact amount to be awarded to Wife for the debt owed by Keith Butler as reimbursement for the funeral costs of his father; and (3) enter an order finding one-half (½) of the $6,000 removed from the joint account of Wife and Husband be paid to Wife.

CRANDALL, P.J., and REINHARD, J., concur.