IN RE the MARRIAGE OF:

Arlene M. WOLSKI, Petitioner-Respondent,

v.

Chris R. WOLSKI, Respondent-Appellant.

Court of Appeals

*No. 96–0136. Submitted on briefs March 4, 1997.—Decided April 15, 1997.*

(Also reported in 565 N.W.2d 196.)

For the respondent-appellant the cause was submitted on the briefs of *Anthony J. Staskunas* of *Elliott, Elliott & Staskunas* of West Allis.

For the petitioner-respondent the cause was submitted on the brief of *Frederick F. Klimetz* of Greendale.

Before Wedemeyer, P.J., Schudson and Curley, JJ.

CURLEY, J. Chris R. Wolski appeals from a judgment of divorce that awarded maintenance to his ex-wife. Chris and Arlene M. Wolski were married and divorced twice. The first marriage lasted twenty years and the second approximately three years. Chris contends that the trial court erred in considering the entire length of both marriages in setting maintenance. He also argues that the trial court was obligated to consider the first marital settlement agreement's terms limiting maintenance to a fifty-four month period and setting the amount at $200 per month when deciding the maintenance award in the second divorce action. Because the trial court correctly considered the entire length of both marriages as a factor when granting maintenance, and because the trial court is not bound by the first marital settlement agreement in its maintenance determination, we affirm.

## I. Background.

Chris and Arlene Wolski were first married on November 11, 1972; they had two children. The Wolskis were divorced on January 15, 1992. At that time, the trial court accepted a marital settlement agreement between the parties which divided their property and included custody, placement, and child support provisions. It also required Chris to pay limited maintenance of $200 per month for fifty-four months to Arlene.

On December 30, 1992, Chris and Arlene remarried, ending Chris's obligations to pay ·child support and maintenance after only eleven months of payments. In 1995, Arlene filed a new petition for divorce. At the second divorce trial, the parties reached an agreement on all issues except maintenance. The

sole contested issue was whether maintenance should be awarded to Arlene and, if so, how much should be paid and how long should it last. Chris took the position that the trial court should view this marriage as being less than three years in length when deciding maintenance or, if awarding maintenance, the court should be required to consider the limited maintenance provisions in the first agreement when setting maintenance. Arlene urged the trial court to look at the combined length of their marriages when setting maintenance. The court acknowledged that the issue appeared to be one of first impression in Wisconsin. The trial court stated, among other things:

> [C]onsidering the collective length of their marital relationships, relative brevity of the interval between them and the uninterrupted and continuing nature of [Chris's] legal responsibility to support, it would be unreal and unjust to preclude the judicial consideration of the entire marital history of the parties.

Thus, the trial court found that it could consider the combined length of the two marriages and ordered $300 per month indefinite maintenance to Arlene. By so finding, the trial court disregarded the length and amount of maintenance found in the first marital settlement agreement. Chris appeals.

## II. Analysis.

Chris first argues that the trial court erred when it considered the entire length of time he was married to Arlene as a factor in determining maintenance under § 767.26(10), STATS.[1] We disagree.

---

[1] Section 767.26(10), STATS., provides:

The determination of the amount and duration of maintenance is entrusted to the discretion of the trial court and we will not disturb it on appeal absent an erroneous exercise of that discretion. *See DeLaMatter v. DeLaMatter*, 151 Wis. 2d 576, 586, 445 N.W.2d 676, 680 (Ct. App. 1989). Although the court in making a maintenance determination is not obligated to consider all of the statutory factors provided in § 767.26, STATS., the court must "consider those factors that are relevant." *Id.*

Whether it was appropriate for the trial court to consider the entire length of the Wolskis' two marriages when awarding maintenance is an issue of first impression in Wisconsin. Chris argues that the proper approach would have been to treat this marriage as an approximate three-year marriage. Relying on § 767.37(3), STATS.,[2] he reasons that the divorce judgment ended their first marriage and it should be given finality. Therefore, he argues, it was error for the trial court to consider this a twenty-two-plus-year marriage. Alternatively, he posits that if the trial court were going to conclude that the "catch-all"

Upon every judgment of annulment, divorce or legal separation, or in rendering a judgment in an action under s. 767.02 (1) (g) or (j), the court may grant an order requiring maintenance payments to either party for a limited or indefinite length of time after considering: . . . .

(10)     Such other factors as the court may in each individual case determine to be relevant.

[2] Section 767.37(3), STATS., provides:

(3)     When a judgment of divorce is granted it shall be effective immediately except as provided in s. 765.03(2). Every judge who grants a judgment of divorce shall inform the parties appearing in court that the judgment is effective immediately except as provided in s. 765.03 (2).

provision of § 767.26(10), STATS., allowed for the consideration of the length of both marriages, then the trial court should also have considered the provisions of the first marital settlement agreement which set maintenance at $200 per month and limited maintenance to fifty-four months. We reject his arguments.

First, although a judgment of divorce will be given the same deference as all civil judgments, there is a significant difference in this case. As the trial court properly noted, once the parties remarry, pursuant to § 767.38, STATS., the earlier judgment is revoked and any orders emanating out of it are rescinded.[3] Second, we conclude that authority for combining the years of marriage is also found in the factors listed for consideration in § 767.26(6), STATS., which provides that "[t]he feasibility that the party seeking maintenance can become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and, if so, the length of time necessary to achieve this goal." *Id.* Given this directive, a reasoned approach to determining the standard of living enjoyed during the marriage requires the trial court to look beyond the duration of the second marriage, because

---

[3] Section 767.38, STATS., provides:

When a judgment of divorce has been granted and the parties shall afterwards intermarry, the court, upon their joint application and upon satisfactory proof of such marriage, shall revoke all judgments and any orders which will not affect the right of 3rd persons and order the record impounded without regard to s. 767.19 and neither the record nor any part of the record shall be offered or admitted into evidence in any action or proceeding except by special order of the court of jurisdiction upon good cause shown in any paternity proceedings under this chapter or by special order of any court of record upon a showing of necessity to clear title to real estate.

whatever standard of living was enjoyed by Arlene and Chris was established during the twenty-two-plus years they were married to each other, not just the last two-plus years.

We also uncover support for the trial court's conclusion in other jurisdictions. In *Thomas v. Thomas*, 571 So. 2d 499 (Fla. 1st Dist. Ct. App. 1990), *overruled on other grounds by Cox v. Cox*, 659 So. 2d 1051 (Fla. 1995), the First District Court of Appeal of Florida faced an identical situation to that presented here. The parties had been married from 1955 to 1985 when their marriage was dissolved. *Id.* at 501. They reconciled and were remarried in May 1986; however, in 1988 the husband filed for divorce which was granted a year later. *Id.* at 502. "The trial court denied the wife's claim for permanent alimony, expressly finding that this had been a three-year marriage." *Id.* at 503. The District Court of Appeal rejected the trial court's decision, stating:

> In the unique circumstances of this case, it is unrealistic to view the wife's request for alimony in the context of a three-year marriage. The parties to this proceeding spent thirty-three years together, interrupted by a four to six month hiatus. . . . Therefore, we conclude the trial court abused its discretion in making an alimony determination without considering the prior thirty-year marriage of the parties.

*Id.*

Similar conclusions were reached by the First District California Court of Appeal in *Chapman v. Chapman,* 237 Cal. Rptr. 84 (Cal. Ct. App. 1st Dist. 1987), when it wrestled with the maintenance issue in the second of two divorces by the same parties. The

trial court's "support order was based on consideration only of the second marriage of three and a half months duration, without regard to the prior marriage of 19 years." *Id.* at 85. The Court of Appeal rejected the trial court's conclusion, stating:

> The obligation of support derives from the enduring nature of a couple's relationship, which is generally measured by the length of their marriage. . . . All else being equal, the obligation will be comparatively short after a brief marriage and lengthy after a long marriage. The factor which most frequently warrants a lengthier period of support—the fact that the supported spouse devoted years to homemaking and childrearing and thereby gave up the opportunity to acquire marketable skills—appears to be present in this case. Defining the rights and duties of the parties without regard to this factor ignores the reality of their life together and penalizes appellant for trying once more to make the marriage work.

*Id.* at 88–89 (citations and footnote omitted). We agree with the statements of both these jurisdictions.

As the trial court, paraphrasing *Chapman*, reasoned in this case: " '[I]t would be . . . unreal and unjust to preclude [the] judicial consideration of the entire marital history of the parties.' " Having determined that the estimated incomes at the time of divorce were $26,000 for Arlene and $46,000 for Chris, the trial court stated that "the fairness doctrine" as set forth in *LaRocque v. LaRocque,* 139 Wis. 2d 23, 406 N.W.2d 736 (1987), "would dictate the appropriateness of maintenance in these circumstances." Further, the trial court noted: "[W]e have a marriage relationship, although they went to the alter [sic] twice, they have a

191

marriage relationship that goes back to November of 1972." We agree. When parties have been married to one another more than once, a trial court, in its exercise of discretion, can properly look at the total number of years of the marriage when considering maintenance for one of the parties. Accordingly, the trial court did not erroneously exercise its discretion utilizing the combined years of marriage when setting maintenance. *See DeLaMatter,* 151 Wis. 2d at 586, 445 N.W.2d at 680.

Chris alternatively argues that if the trial court can look at the entire length of their marital relationship, then the trial court must be required to consider the terms of the first marital settlement agreement when setting maintenance. Chris presents several arguments for this assertion. He believes public policy would be well-suited by requiring a trial court to look at an initial divorce judgment because he fears that a party may entice a former spouse into a new marriage in the hopes of securing a better financial arrangement in the second divorce. He also proposes that for some divorced parties the fear of additional financial obligations to a former spouse beyond those found in the divorce settlement may chill any reconciliation attempts. We disagree. A party aggrieved of a divorce settlement is more likely to appeal the trial court's decision rather than to embark on the perilous course of wooing an ex-spouse in the hopes of gaining a better deal at the time of the second divorce. Further, a person contemplating a reconciliation, but fearful of future financial risks with an ex-spouse, would always be free to negotiate a premarital agreement before the nuptials are performed. Thus, public policy considerations do not

192

warrant requiring a trial court in a second divorce proceeding to either strictly adhere to or consider the initial marital settlement agreement.

■

Chris's second reason for requiring the trial court to consider the first settlement agreement is his unsubstantiated assertion that "it is fair to assume that Mr. Wolski gave up certain rights and property in exchange for a limited period of maintenance and for a lower amount of maintenance." A review of the first marital settlement agreement, however, does not support his claim. Contrary to the appellant's implied contention that there was a disproportionate property settlement, the original marital settlement agreement actually required Arlene to pay Chris $5,193 to "equalize the property division." Nothing in the agreement suggests that Chris "bought out" a portion of Arlene's maintenance rights by accepting less than fifty percent of the property. Given the apparent equal property division in the first divorce, no equity principle required the trial court to utilize the first stipulation in reaching its maintenance decision.

■

Chris advances a third theory for his position. He argues that since Arlene is not challenging any of the other provisions found in the first agreement, it is unfair for her to embrace all the earlier provisions except the one for maintenance. While not directly stating so, Chris implies that Arlene accepted all of the earlier provisions found in the first marital settlement agreement except the one dealing with maintenance. Again, however, the record does not support Chris's argument. The second divorce settlement is not identical to the first and only one issue existed in the

second divorce trial because the parties stipulated to all the other terms.

Finally, Chris claims that there were no significant financial changes between the first and second divorce, and thus, the maintenance amount from the first divorce should control the outcome of the second, or at least be given some deference by the trial court in the second divorce action. Chris asserts that by putting the parties back to where they were at the time of the first divorce, neither party would have an advantage over the other in the second divorce as the parties "remained roughly similar from the time of the first divorce to the second divorce."

A review of the proceedings and the briefs submitted to the trial court yields a different conclusion. At the first divorce, Arlene was awarded the family condominium. After their remarriage, the parties sold it and built a home, later sold at a loss. Following the first divorce, Chris was obligated to maintain insurance. After the second marriage, however, Chris cashed in his life insurance policy. Arlene, too, cashed in a valuable asset awarded to her in the first marital settlement agreement. Further, Arlene contended at trial that she was obligated to help pay Chris's attorney fees from the first divorce, although she paid her attorney bill in full when single. Clearly, the parties were not in the same financial position they occupied at the time of the first divorce action, and given their changed financial situation, it would have been an error for the trial court to simply reinstate the first marital settlement agreement. The trial court appropriately looked at the relevant factors when setting the amount and length of the maintenance award.

In sum, the trial court properly exercised its discretion in this case. It properly considered the total years of marriage in its analysis of the maintenance question. Further, although the trial court was aware of the first settlement's provisions regarding maintenance, it was not bound by them and in a proper exercise of discretion looked to the current conditions of the parties in making its maintenance determination. We further note, however, that the trial court may consider the terms of the first marital settlement agreement when appropriate. Accordingly, we affirm.

*By the Court.*—Judgment affirmed.