IN RE the MARRIAGE OF: Theodore E. DeLaMAT-
TER, Petitioner-Appellant,

v.

Barbara J. DeLaMATTER, Respondent.

Court of Appeals

*No. 88-1098. Submitted on briefs March 10, 1989.—Decided
July 12, 1989.*

(Also reported in 445 N.W.2d 676.)

On behalf of the petitioner-appellant, the cause was submitted on the brief of *Donald E. Mayew* of *Phillips, Richards, & Mayew, S.C.* of Kenosha.

On behalf of the respondent, the cause was submitted on the brief of *Mari Higgins-Frost, S.C.* of Kenosha.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

NETTESHEIM, J. Theodore DeLaMatter appeals from a divorce judgment requiring him to pay $300 per week permanent maintenance to his former wife, Barbara. The order was made retroactive to the date the divorce was granted. Theodore challenges the maintenance award, claiming that the trial court erred in its findings regarding Barbara's ability to work and Theodore's income. Additionally, Theodore argues that the trial court erred by making the maintenance award retroactive to the date the divorce was granted.

We conclude that the trial court's finding as to Theodore's income is not clearly erroneous. However, we conclude that the court's finding that Barbara's inability to work is due to a mental illness is clearly erroneous. We also conclude that the trial court erroneously failed to consider Barbara's refusal to seek treatment for her alcoholism in setting the maintenance award. Because of this, we reverse the maintenance award and remand for a new maintenance determination. Therefore, we do not address the propriety of the retroactive application of the maintenance award.

## FACTS

Theodore and Barbara DeLaMatter were married in 1962. Two children were born to the marriage. Both children are now adults. This action was filed in April, 1986. On September 2, 1987, the evidentiary phase of the

580

trial was completed. At Theodore's request, the court granted a divorce to the parties. However, the property and maintenance issues were not then decided. Instead, the court took these issues under advisement. The final judgment was not entered until March 23, 1988, following the court's written decision on the property and maintenance issues.

At trial, Barbara's psychiatrist, Dr. William Bjerregaard, testified that Barbara suffered from panic disorder, histrionic personality disorder and alcohol abuse and dependence. Panic disorder is characterized by episodes lasting from five minutes to two hours, during which the individual experiences shortness of breath, palpitations, nausea, dizziness, fear of death, and fear of losing control. Barbara is currently on medication to control this disorder. Histrionic personality disorder affects the manner in which the individual deals with people and is characterized by a tendency to draw attention to one's self, be flamboyant, and have shallow relationships with others, but does not affect the individual's ability to maintain employment.

Barbara's alcoholism is characterized by a tendency to turn to alcohol repeatedly and become intoxicated, especially when experiencing a panic attack. Despite Dr. Bjerregaard's strong recommendation that Barbara undertake inpatient treatment for this problem, she has refused to follow this recommendation, although she does attend AA meetings.

Dr. Bjerregaard opined that Barbara can be mentally competent when experiencing a panic attack, as long as she is not intoxicated. However, Dr. Bjerregaard testified that Barbara is currently unable to maintain steady employment due to her alcohol abuse and dependency. He stated that the panic and personality disorders, in and of themselves, do not inhibit Barbara's abil-

581

ity to maintain steady employment, and that if she could rectify her alcohol abuse she would be able to maintain gainful employment.

In its decision, the trial court found that both parties contributed equally to the marriage: Theodore primarily through his employment, and Barbara through both employment and the greater share of homemaking and child care services. At the time of the divorce, Barbara was unemployed. The trial court found that although Barbara has some marketable employment skills, she "has chronic and disabling mental illness which precludes her ability to any longer engage in gainful employment."

The trial court found that Theodore earned $877 gross, $600 net, on a weekly basis. The court arrived at these figures based upon Theodore's average weekly earnings of $800 from his regular employment, and approximately $4000 annually from sideline work, which averaged $77 weekly. After discounting for taxes, the court concluded that Theodore's net income could reasonably be expected to produce $600 per week.

Based on these factual findings, the trial court awarded Barbara permanent maintenance of $300 per week, fifty percent of Theodore's net income, retroactive to the date of the divorce. Theodore appeals the amount, duration, and retroactivity of this award.

## MAINTENANCE

The determination of the amount and duration of maintenance is entrusted to the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *LaRocque v. LaRocque,* 139 Wis. 2d 23, 27, 406 N.W.2d 736, 737 (1987). An abuse of discretion occurs when the trial court has failed to consider the

proper factors, has based the award upon a factual error, or when the award itself was, under the circumstances, either excessive or inadequate. *Jasper v. Jasper,* 107 Wis. 2d 59, 63–64, 318 N.W.2d 792, 795 (1982). On review of the trial court's factual findings, we will not reverse unless those findings are clearly erroneous. Sec. 805.17(2), Stats.

On appeal, Theodore seeks reversal of the maintenance award to Barbara. He argues that the trial court abused its discretion: (1) by finding that Barbara is unable to work because of her mental illness; (2) by failing to consider Barbara's refusal to seek treatment for her alcoholism; and (3) by certain of the findings relative to his income. We will address each of Theodore's challenges in turn.

### Alcoholism

A primary factor underpinning the trial court's maintenance award is the finding that Barbara has a "chronic and disabling mental illness" which probably caused her alcoholism and precludes her from maintaining gainful employment. Theodore argues that these findings are clearly erroneous. Additionally, Theodore contends the trial court erroneously failed to take into consideration the fact that Barbara has refused to seek treatment for her alcohol abuse.

On review, due regard must be given to the opportunity of the trial court to judge the credibility of the witnesses. *Ozaukee County v. Flessas,* 140 Wis. 2d 122, 131, 409 N.W.2d 408, 412 (Ct. App. 1987). If more than one reasonable inference may be drawn from the evidence, we must accept the one chosen by the trial court.

*C.R. v. American Standard Ins. Co.,* 113 Wis. 2d 12, 15, 334 N.W.2d 121, 123 (Ct. App. 1983).

Recognizing this deferential standard of review, we nonetheless conclude that the trial court's findings that Barbara's mental illness caused her alcoholism and precludes her from working is not documented in the evidence, nor can it be inferred from the evidence. To the contrary, the evidence shows that if Barbara would seek inpatient treatment for her alcohol dependency, there is a possibility that she could resume working.

Dr. Bjerregaard's testimony established that it is Barbara's alcohol dependency that is at the heart of her problem. He stated that alcoholism is a disease, and that Barbara is not mentally competent when using alcohol. Dr. Bjerregaard opined that Barbara can be mentally competent when experiencing a panic attack, so long as she is not intoxicated at the time. However, Barbara expressly refuses to follow her doctor's recommendations for inpatient treatment of her alcoholic illness.

Dr. Bjerregaard testified that his prognosis is guarded because Barbara refuses to follow his recommendation to receive further alcohol treatment. Therefore, she will continue to have problems with alcohol. If she did receive this treatment, Dr. Bjerregaard believes Barbara would be able to function better in approximately one year. Currently, with the combination of the panic attacks and alcoholism, it is unlikely she will control her alcoholism. Dr. Bjerregaard was unable to testify whether Barbara had made her best effort to control her alcoholism.

Critical to the issue on appeal, Dr. Bjerregaard also testified that Barbara's alcoholism—not the panic and personality disorders—precludes her from working. According to Dr. Bjerregaard, if Barbara completed an

inpatient treatment for her alcoholism, it is likely that she could maintain employment.

Based upon this testimony, the trial court found that Barbara's "bad health prevents her from engaging in gainful employment at this time." To the extent this finding is directed to Barbara's total health picture, it is clearly supported by the evidence and Theodore does not dispute this finding.

The trial court further found, however, "[t]hat [Barbara] has chronic and disabling mental illness which precludes her ability to any longer engage in gainful employment." It is this finding that Theodore disputes, arguing that Barbara's mental illness is not disabling to the point of precluding employment. We agree.

Dr. Bjerregaard never opined that Barbara's mental illness precluded her from maintaining employment. To the contrary, he testified that the panic and personality disorders, absent the alcoholism, would *not* bar Barbara from maintaining steady employment. Rather, it is Barbara's alcoholism which precludes her from being employed.[1] We conclude that the trial court's finding that Barbara's mental illness precludes her employment is clearly erroneous.

---

[1] Barbara points to Dr. Bjerregaard's statement that at the present time, with the combination of her panic disorder, personality disorder and alcoholism, it is unlikely that she will undergo the necessary alcohol treatment. She argues that this evidence supports her claim that her mental illness precludes her from working. This is incorrect. The doctor's statement is that the combination of all Barbara's afflictions makes it unlikely that she will obtain treatment—not that the mental illness precludes employment.

■

We now turn to the question of whether an alcoholic spouse's refusal or inability to obtain the recommended treatment for the alcoholic condition is a relevant factor in a maintenance determination. An award of maintenance is within the trial court's discretion, and we uphold such an award absent an abuse of discretion. *Olson v. Olson,* 148 Wis. 2d 219, 221, 435 N.W.2d 266, 267 (Ct. App. 1988). To be sustained, a discretionary determination must be the result of a rational mental process where the facts of record and law relied upon are stated and considered together to achieve a reasoned and reasonable decision. *Id.* In making a maintenance determination, the court is not obligated to consider all of the statutory factors set forth in sec. 767.26, Stats. *Trattles v. Trattles,* 126 Wis. 2d 219, 228, 376 N.W.2d 379, 384 (Ct. App. 1985). The court must, however, consider those factors that are *relevant. Id.*

The facts here show that Barbara has failed to follow Dr. Bjerregaard's recommendation that she obtain inpatient treatment for her disease. The doctor believes that if Barbara can control her alcohol abuse, she could maintain gainful employment.

■

Alcoholism is a disease. *Connecticut Gen. Life Ins. Co. v. DILHR,* 86 Wis. 2d 393, 407, 273 N.W.2d 206, 212–13 (1979). One of its well-known manifestations is denial. An alcoholic may be so affected by the disease as to show a disregard for the benefits of treatment. Thus, a person suffering from alcoholism is often unable to obtain help due to the refusal or inability to acknowledge the existence of the disease. Even if acknowledgment is present, the disease may still cause the alcoholic to refuse treatment. The issue before us is whether such

refusal is relevant to a maintenance determination. We conclude it is.

Modern thinking as to alcoholic treatment holds that recovery from alcohol abuse depends heavily on the determination and motivation of the individual alcoholic to recover. *See* Note, *Alcohol Abuse and the Law,* 94 Harv. L. Rev. 1660, 1662-63 (1981). Studies also reveal that alcoholics can be successfully *coerced* into effective treatment. Hanrahan, *A Challenge for Judges— Voluntary vs. Involuntary Treatment of Alcoholics,* 1982 Fla. B.J. 312, 312. Other people may permit the alcoholic to continue drinking by unwittingly creating an environment in which the alcoholic's drinking is pleasant, acceptable, reasonable, and ever present. *See* S. Brown, *Treating the Alcoholic: A Developmental Model of Recovery,* at 112, 250 (1985). One filling such a role is referred to as an "enabler" or "co-alcoholic." *Id.* at 112.

The function of a family court is not to deliver medical services to an alcoholic. Nonetheless, the courts do not operate in a vacuum. Just as a family member or friend can be an "enabler" or "co-alcoholic," so also can a court by virtue of its orders which provide no incentive to the alcoholic to address the disease. Coercion is often necessary in the treatment of alcoholism because of the massive denial and self-deception attending the disease. *See* Zimberg, *Office Psychotherapy of Alcoholism,* in Alcoholism And Clinical Psychiatry 213, 218 (1982).

We conclude that when an alcoholic spouse has refused medically recommended treatment and then claims a need for permanent maintenance because of the alcoholism, such refusal is a relevant factor in the court's maintenance decision. The court should also consider the likely effect of the treatment (whether or not accepted) on the alcoholic spouse's ability to obtain and

587

maintain employment and the effect, if any, of a permanent maintenance award on the motivation of the spouse to obtain treatment.

The trial court's decision in this case is silent on Barbara's failure or refusal to follow her doctor's recommendation for treatment of her disease. As such, a relevant fact of record was not stated and considered in reaching a reasoned decision. *Olson,* 148 Wis. 2d at 221, 435 N.W.2d at 267. This silence constitutes an abuse of discretion. On this additional ground we reverse and remand the maintenance award.

We stress that we do not hold, as a matter of law, that an alcoholic spouse who refuses medically recommended treatment is not entitled to permanent maintenance. We only hold that such condition is a relevant consideration to a proper exercise of discretion.

*Income Calculations*

Theodore claims that the trial court made several errors in its calculation of the amount of income he earns annually. A trial court's income determinations are findings of fact which we will not set aside unless clearly erroneous. Sec. 805.17(2), Stats.

First, Theodore disputes the trial court's finding that he earns $800 per week gross from his regular employment. In support, he points to evidence of a paycheck stub from his employer which indicates a semi-monthly salary of $1550 ($718.24 per week) and evidence that he has not received a pay raise since that paycheck was issued. He also asserts that there was no evidence of either the availability or frequency of overtime. Therefore, Theodore argues there was no evidence by which the court could conclude that he would earn an addi-

588

tional $81.76 per week. Instead, Theodore contends that the correct amount should have been $718.24 and the $800 figure is clearly erroneous. We disagree.

There is evidence in the record that Theodore earned overtime income on a regular basis. His May 31, 1987 paycheck stub indicated that in the previous five months of 1987, his overtime earnings totaled $3117.37. In addition, over that same five-month period, he accepted a $311 voluntary income deferment. The week of May 31, 1987 fell in the twenty-second week of 1987. Therefore, by our calculations, Theodore had earned an average of $155.84 per week in extra income over the first five months of 1987. When this amount is added to the $718.24 weekly salary he regularly earned, his average pay per week totaled $870.08. The trial court's finding that Theodore "earns and can reasonably be expected to earn $800 per week gross from his regular employment [sic]" is supported by the evidence and is not clearly erroneous. Therefore we affirm the trial court's determination.

Next, Theodore argues that the trial court's finding that he can reasonably be expected to earn $4000 per year on the basis of twenty weeks of sideline work at $200 per week is clearly erroneous. He contends that the evidence only shows that he would be able to earn about $600 per year by doing sideline work. At trial, Theodore testified that he sometimes works for Laminated Products on an emergency basis, and that prior to 1987 the company called him approximately four or five times per year, and paid him $120 cash each time. He also testified that during the first half of 1987, he did not do any work for Laminated Products.

Barbara's testimony contradicts Theodore's on this question. Although on direct examination Barbara testi-

589

fied that Theodore worked for Laminated Products only five to six times per year and earned $200 to $300 each time, on redirect she explained that she had been confused on direct examination and that Theodore actually worked for Laminated Products on an average of two to three times a week for twenty weeks each year. Furthermore, she testified that Theodore had been doing this part-time work for the last twenty-four years.

On review, due regard must be given to the opportunity of the trial court to judge the credibility of the witnesses. *Flessas,* 140 Wis. 2d at 131, 409 N.W.2d at 412. If more than one reasonable inference may be drawn from the evidence, we must accept the one chosen by the trial court. *C.R.,* 113 Wis. 2d at 15, 334 N.W.2d at 123. In this case, the trial court's finding that Theodore could reasonably be expected to earn $4000 per year on the basis of twenty weeks of sideline work at $200 per week is a reasonable inference to be drawn from one version of the trial testimony. We cannot conclude that the trial court's finding was clearly erroneous. Accordingly, we affirm.

Theodore also disputes the trial court's finding as to his net income. Based on the preceding arguments, he contends that his yearly gross income is $8280 less than the amount found by the trial court and, accordingly, the trial court used the wrong gross income figure and tax bracket to calculate his net income. Since we have already concluded that the trial court's findings as to Theodore's gross income are not clearly erroneous, this argument also fails. We affirm the trial court's net income finding.

*Retroactive Maintenance Award*

On August 13, 1987, at the conclusion of the evidentiary phase of the trial, Theodore requested the trial court to grant the parties a divorce. The court granted this request on September 2. The temporary maintenance order of $100 per week to Barbara remained in effect and the court reserved its rulings on maintenance and property division. Seven months later the trial court entered its property division and maintenance judgment, ordering $300 per week maintenance retroactive to September 2, 1987. On appeal, Theodore argues that the trial court lacked the authority to make the increase in maintenance retroactive by issuing a *nunc pro tunc* order. Due to our reversal of the maintenance provision of the judgment, we must first consider whether this issue is moot.

Generally, we will not decide moot issues. *City of Racine v. J-T Enters. of Am., Inc.,* 64 Wis. 2d 691, 700, 221 N.W.2d 869, 874 (1974). A matter is moot if a determination is sought which cannot have a practical effect on an existing controversy. *Id.* In this case, we have reversed that part of the judgment pertaining to maintenance. This includes the trial court's order making the final maintenance award retroactive. Therefore, our opinion on this matter will have no practical effect. Rather, such an opinion would be merely supervisory.

"Moot cases will be decided on the merits only in the most exceptional or compelling circumstances." *Id.* at 702, 221 N.W.2d at 875. In this court's discretion, it may decide moot cases on the merits where the constitutionality of a statute is involved or where the precise situation under consideration arises with such frequency

that a definitive decision is essential to guide trial courts in similar instances. *Id.* at 701, 221 N.W.2d at 875. This case presents neither of these exceptions.

Although we do not address the retroactivity question on its merits, we note that in cases following remand after appeal, the trial court may, in its discretion, retroactively apply those portions of the judgment which are covered by the remand from the date of the appealed judgment. *Overson v. Overson,* 140 Wis. 2d 752, 759, 412 N.W.2d 896, 898–99 (Ct. App. 1987). Whether a final maintenance award may be retroactively applied to the date the judgment of divorce was granted remains an open question. Should the court conclude that retroactivity to the date of divorce is permissible, it should state its reasons for making the order retroactive, including a consideration of the amount of the resultant "retroactive arrearage" and the financial impact upon the obligor.

*By the Court.*—Judgment and order reversed and cause remanded.