In re the Marriage of:

Jeffrey S. Hacker, Petitioner-Respondent,†

v.

Nancy M. Hacker, Respondent-Appellant.

Court of Appeals

*No. 2005AP223–FT. Submitted on briefs May 25, 2005.
—Decided August 2, 2005.*

2005 WI App 211

(Also reported in 704 N.W.2d 371.)

† Petition to review denied 10-14-05.

180

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Gregg S. Bott* of *Di Renzo & Bomier, LLC* of Neenah.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Robert B. Loomis* and *Kelly S. Kelly* of *Herrling, Clark, Hartzheim & Siddall, Ltd.* of Appleton.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J.   Nancy Hacker appeals a judgment reducing her maintenance from $46,500 a year to $6,500 a year.[1] Nancy argues the circuit court erred when it modified the award both because it did not properly consider the dual objectives of maintenance, support and fairness, and because it did not base its decision on its factual findings. She argues alternatively that the court used maintenance to punish her for her

---

[1] This is an expedited appeal under Wis. Stat. Rule 809.17. All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

alcoholism, the reduced award was improperly calculated, and there was no finding of a "substantial change in circumstance" to support the modification. We need not reach the substance of all Nancy's claims because we conclude the reduced award does not satisfy the support objective of maintenance. We therefore reverse the judgment and remand the cause for further proceedings.

## BACKGROUND

¶ 2.   Nancy and Jeffrey Hacker were married on July 21, 1984, and divorced on July 9, 2003. During their eighteen-year marriage, they had two children, a son and a daughter, who were fifteen and six respectively when the Hackers divorced.

¶ 3.   Nancy and Jeffrey both worked full-time throughout the marriage. Jeffrey, a certified public accountant, eventually became chief financial officer for Touchpoint Health Plan. Nancy worked as a special education teacher in the public schools. At the time of the post-divorce maintenance review, Jeffrey earned $144,000 a year. In 2002, before the Hackers' divorce, Nancy's annual salary was approximately $60,000. Nancy's employment was terminated in August 2002, however, because of problems attributed to her drinking. She was thus unemployed when the divorce was finalized; although she was collecting $43,500 a year in disability benefits. Those benefits ended in 2004, leaving Nancy, who was still unemployed, with no income.

¶ 4.   The divorce judgment split the Hackers' $789,894 marital estate evenly between Nancy and Jeffrey. Nancy was initially ordered to pay Jeffrey $11,844 a

year in child support[2] while Jeffrey was ordered to pay Nancy $46,500 a year in maintenance. Noting the uncertainties surrounding Nancy's financial future, the circuit court declined to fix child support or maintenance permanently at that time, scheduling a hearing to review those awards in one year. After the September 2004 review hearing, the court ordered Jeffrey to pay Nancy $13,200 in child support and reduced Nancy's temporary maintenance award of $46,500 to $6,500 annually for an indefinite term. Nancy now appeals.

## DISCUSSION

¶ 5. Under WIS. STAT. § 767.32, a circuit court has the authority to modify a maintenance order "upon a finding of a substantial change in circumstances." As a threshold matter, Nancy contends that we should reverse the circuit court's decision because the court never formally found a "substantial change in circumstances" and thus had no authority to modify the original maintenance order. She further contends the court could not have found such a change because Nancy's alcohol abuse was neither a "financial circumstance" nor "a substantial change." Jeffrey responds that it was unnecessary for the court to make a substantial change finding because the court described the initial maintenance as, in all probability, not permanent.

¶ 6. We have recently determined that our standard of review for whether there is a substantial change in circumstances is a deferential one. *Cashin v. Cashin*, 2004 WI App 92, ¶ 44, 273 Wis. 2d 754, 681 N.W.2d 255. We thus affirm the circuit court's decision on that

---

[2] The Hackers agreed to joint legal custody, but primary physical placement was awarded to Jeffrey.

matter if there is a reasonable basis in the record for the decision. Based on that standard of review, we must reject Nancy's argument that the absence of a formal finding of a substantial change in circumstances is sufficient to establish an erroneous exercise of discretion.

¶ 7. We are not persuaded by Jeffrey's contention that the court's characterization of the initial maintenance award as not permanent meant it was free to modify the order without finding a substantial change in circumstances. We have concluded elsewhere that a circuit court has the authority, if it provides appropriate and legally sound reasons, to "hold open" a final maintenance decision after declining to make a maintenance award at that time of a divorce. *See, e.g., Grace v. Grace,* 195 Wis. 2d 153, 158, 536 N.W.2d 109 (Ct. App. 1995). But Jeffrey never explains why the circuit court's behavior here is equivalent to a decision not to award maintenance and to retain jurisdiction by holding open the possibility of a future award. A judgment of divorce, including the maintenance award contained therein, is a final judgment, and it is not clear the circuit court can alter that status merely by noting circumstances that might make it necessary to modify the judgment in the future. *See Kenyon v. Kenyon,* 2004 WI 147, ¶ 25, 277 Wis. 2d 47, 690 N.W.2d 251.

¶ 8. But we need not resolve that issue here[3] because we conclude that, while the circuit court never explicitly found a substantial change in circumstances, facts in the record support such a finding. At the time of

---

[3] Nor are we required to develop Jeffrey's argument for him. *See, e.g., Barakat v. DHSS,* 191 Wis. 2d 769, 786, 530 N.W.2d 392 (Ct. App. 1995).

the divorce, Nancy was still receiving disability benefits. Those benefits were no longer available in 2004, when the maintenance review hearing took place. Nancy's inability to control her drinking after completing multiple, intensive inpatient treatments also constitutes a substantial change in circumstance. Although Nancy claims that facts about her alcoholism are not a financial circumstance, they directly impact her earning capacity and thus affect her financial circumstances. *See, e.g., Kenyon,* 277 Wis. 2d 47, ¶¶ 31–32 (spouse's disability and pain worsened to the point she was unable to work).

¶ 9.   When a circuit court modifies a maintenance award, it applies the same factors, set out in Wis. Stat. § 767.26, that govern the original determination of maintenance. *See Rohde-Giovanni v. Baumgart,* 2003 WI App 136, ¶ 8, 266 Wis. 2d 339, 667 N.W.2d 718, *aff'd,* 2004 WI 27, 269 Wis. 2d 598, 676 N.W.2d 452. The court need not consider all the statutory factors, but must consider those relevant to the case. *See Poindexter v. Poindexter,* 142 Wis. 2d 517, 532, 419 N.W.2d 223 (1988). The statutory factors further two distinct but related maintenance objectives:   to support the spouse who receives maintenance in a manner that reflects the needs and earning capacities of the parties—the "support" objective—and to ensure a fair and equitable financial arrangement between the spouses—the "fairness" objective. *LaRocque v. LaRocque,* 139 Wis. 2d 23, 33, 406 N.W.2d 736 (1987).

¶ 10.   How much maintenance to award and for how long to award it are decisions entrusted to the sound discretion of the circuit court, and we will not disturb those decisions unless the court exercises its

186

discretion erroneously. *Id.* at 27. A valid exercise of discretion is *not,* however, the equivalent of "unfettered decision-making." *Hartung v. Hartung,* 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981). Discretionary determinations must be the product of a rational mental process by which the facts of record and the law relied on are stated and considered together "for the purpose of achieving a reasoned and reasonable determination." *Id.*

¶ 11.  We begin our review of any maintenance award, modified or otherwise, with a consideration of WIS. STAT. § 767.26, which gives the circuit court authority to grant maintenance after considering:

(1)    The length of the marriage.

(2)    The age and physical and emotional health of the parties.

(3)    The division of property made under s. 767.255.

(4)    The educational level of each party at the time of marriage and at the time the action is commenced.

(5)    The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.

(6)    The feasibility that the party seeking maintenance can become self-supporting at a standard of living reasonably comparable to that enjoyed

187

during the marriage, and, if so, the length of time necessary to achieve this goal.

(7) The tax consequences to each party.

(8) Any mutual agreement made by the parties before or during the marriage, according to the terms of which one party has made financial or service contributions to the other with the expectation of reciprocation or other compensation in the future, where such repayment has not been made, or any mutual agreement made by the parties before or during the marriage concerning any arrangement for the financial support of the parties.

(9) The contribution by one party to the education, training or increased earning power of the other.

(10) Such other factors as the court may in each individual case determine to be relevant.

A circuit court errs if it misapplies or fails to apply these factors, or if it fails to "give full play" to maintenance's dual objectives. *See Hartung*, 102 Wis. 2d at 66.

¶ 12. Nancy argues the court's reduced maintenance award of $6,500 annually is so low it does not meet her needs, place her at or near the marital standard of living, or reflect Jeffrey's ability to pay. She argues further that no statutory factor supports the reduction. Jeffrey counters that the court's written decision demonstrates it considered all the statutory factors. Although Jeffrey never directly addresses the question of whether the award meets both the fairness and support objectives of maintenance, he asserts that the court properly concluded it would be unfair to force him to subsidize Nancy's alcoholism. We agree with Nancy.

188

¶ 13. In the past, we have found maintenance awards of a mere fraction of a spouse's annual income inadequate. *See Hubert v. Hubert*, 159 Wis. 2d 803, 823, 465 N.W.2d 252 (Ct. App. 1990). While circumstances must adjust to economic reality, a court should not "reduce the recipient spouse to subsistence level while the payor spouse preserves the pre-divorce standard of living." *LaRocque*, 139 Wis. 2d at 35.

¶ 14. Jeffrey argues that our analysis of this case should be guided not by the logic of *Hubert*, but by the principles articulated in *Forester v. Forester*, 174 Wis. 2d 78, 496 N.W.2d 771 (Ct. App. 1993). In *Forester*, the spouse seeking maintenance gave up her job as a surgical technician, moved to the Virgin Islands, and started a charter sailing business that was not expected to generate income for the foreseeable future. *Id.* at 83. Under those circumstances, we concluded the circuit court erred by not considering either the spouse's current potential earning capacity as a surgical technician or her future earning capacity as a charter boat operator. *Id.* at 88–89. We noted that maintenance was designed to provide a party with an appropriate standard of living until the party "exercising reasonable diligence" reached an income level where maintenance was no longer needed. *Id.* at 89. We rejected the idea that one party could unilaterally make a career choice that substantially decreased her earnings while requiring her spouse to support her at the standard of living she enjoyed when she was employed in the job she abandoned. *Id.* at 91.

¶ 15. We do not, however, equate alcoholism with the kind of career choice on which the opinion in *Forester* turns. We have recognized elsewhere that alcoholism is a disease that, like other diseases, can

189

limit or destroy an individual's earning capacity.[4] *See, e.g., DeLaMatter v. DeLaMatter*, 151 Wis. 2d 576, 586–87, 445 N.W.2d 676 (Ct. App. 1989). We have also determined that an alcoholic spouse's refusal to obtain recommended treatment may be a relevant factor in a maintenance decision. *Id.* at 586. The function of the family court is not, as *DeLaMatter* noted, to be an enabler. *Id.* at 587. But *DeLaMatter* went no further than making the refusal to pursue treatment one factor a circuit court may consider in making a maintenance determination.

¶ 16.   Unlike the alcoholic spouse in *DeLaMatter*, Nancy has not refused to seek treatment. She was in full-time treatment for eight months in 2002–2003 at a series of inpatient facilities. By her own admission, Nancy has suffered one or more relapses since that time, but there is no indication that she will not seek further treatment or that she is denying her condition. Unsuccessful treatment is not, as a factual matter, the same as refusing treatment. Treatment for alcoholism is difficult, and many recovering alcoholics lapse more than once before they are able to control the disease.[5] Nor is alcoholism the only disease that is difficult to treat. Not all cancer treatments succeed and many Americans afflicted with diabetes struggle to control their symptoms. The facts in this case thus make it distinguishable from *DeLaMatter*. More importantly, even if the circuit court determined that a history of

---

[4] Other jurisdictions have recognized, as did the circuit court here, that alcoholism is a disease. *See, e.g., DeSipio v. DeSipio*, 186 A.2d 624, 627 (D.C. App. 1962).

[5] *See generally,* Kimberly S. Walitzer and Gerard J. Connors, *Treating Problem Drinking,* 138 Vol. 23, No. 2, ALCOHOL RESEARCH AND HEALTH (1999), at http://www.niaaa.nih.gov/publications/arh23–2/138–143.pdf (July 27, 2005).

failed treatment was a relevant factor, under the "catch-all" or health subsections of WIS. STAT. § 767.26, the court's award must still reflect a proper concern for both the objectives of maintenance.

¶ 17.  Here, the court circuit found that Nancy needed a monthly income of $5,400 to live at a standard comparable to that she enjoyed while married. That amount would, it noted, be "equitable" under ordinary circumstances, and "well-within Jeffrey's ability to provide." The court went on to find that, if she continues to drink, Nancy will likely be unable to earn more than $12,000 a year in a minimum wage position. Based on those findings, it calculated that Jeffrey would have to pay Nancy $41,250 a year to ensure her a disposable income of $5,400 a month.[6] It finally concluded, however, that such an award would be unfair because Nancy, not Jeffrey, should bear the burden of her alcoholism.

¶ 18.  The circuit court's written decision indicated that holding Nancy accountable for her bad choices is not contrary to public policy and that her continued drinking constitutes a species of waste. To avoid punishing the Hackers' children while they were with their mother, the court ordered Jeffrey to pay Nancy $13,200 a year in child support. To ensure that Nancy bore the burden of her alcoholism, it ordered Jeffrey to pay only what he would have had to pay in maintenance "had the tragedy of alcoholism not occurred," $6,500 a year.

¶ 19.  The circuit court's desire to craft a maintenance award that is fair to Jeffrey is understandable. However, as we have long emphasized, maintenance has

---

[6] The court calculated a variety of possible awards, factoring in different placement and child support scenarios.

two objectives—fairness and support—and nothing in Wɪs. Sᴛᴀᴛ. § 767.26 or in Wisconsin case law authorizes an award that satisfies one objective by entirely negating the other. Based on the court's findings of fact, Nancy needs over $5,000 a month to live in a manner that would approximate her marital standard of living, a sum her husband is capable of paying. Yet the court awarded her only $6,500 a year. It is possible that Nancy could make up the shortfall by controlling her drinking and regaining her old earning capacity, but that is merely speculation. Even if Nancy stops drinking, it is unclear whether, after a series of convictions for operating a vehicle while intoxicated and several years of unemployment, she could find a job that pays what she once earned. It is equally unclear what her future earning capacity is. The effect of the award, again based on the court's own findings of fact, is to allow Jeffrey to maintain the standard of living that he enjoyed in marriage while radically reducing Nancy's.

¶ 20. We therefore conclude the circuit court erred when it determined that the pursuit of fairness for one party required a maintenance award that did not come close to providing Nancy with adequate support. To give full play to the fairness and support objectives of maintenance, the court must craft an award based on the facts as it finds them and not on the facts as they might become or as they should have been.

*By the Court.*—Judgment reversed and cause remanded.