SEIDL, J.
¶1 Sayuri Gildersleeve appeals a divorce judgment that terminated her marriage to Troy Gildersleeve. Sayuri argues that the circuit court erroneously exercised its discretion when awarding maintenance and dividing the parties' property. Specifically, she contends the court erred by: (1) failing to order a maintenance award that satisfies the twin objectives of maintenance-i.e., support and fairness; (2) including certain debts in its division of property while excluding the assets that corresponded to those debts; and (3) failing to determine whether Troy incurred over $ 40,000 in debt after the court issued a temporary order prohibiting either party from incurring any additional debt.
¶2 We conclude: (1) the circuit court's maintenance award fails to satisfy the support and fairness objectives as it unfairly consigns Sayuri to live at a subsistence level while allowing Troy to continue living at his pre-divorce standard of living; (2) the court failed to adequately explain why it assigned certain debts to the parties in the property division without including their corresponding asset values; and (3) the record is unclear as to whether Troy incurred the challenged debts in violation of a temporary order. Accordingly, we reverse and remand for the circuit court to reconsider the ordering of maintenance and the property division in a manner consistent with our decision.
BACKGROUND
¶3 The parties were married in 1989. Neither party brought significant assets to the marriage. At the time Sayuri petitioned for divorce in 2016, the parties had three adult children.
¶4 During the marriage, Troy was the primary wage earner and the parties moved frequently to allow him to pursue employment opportunities. They lived in Japan, California, Georgia, Iowa, and Nebraska before settling in Wisconsin. At the time of the divorce, Troy was forty-eight years old and employed in a long-term management position at Bosch Packaging Services with an annual base salary of $ 98,918.82. While not guaranteed, Troy also had earned between $ 18,000 and $ 40,000 per year in commission bonuses in the past.
¶5 By mutual agreement of the parties, Sayuri worked primarily as a homemaker during the marriage. After the parties separated, she began working as a waitress and nail salon technician. At the time of the divorce, she was forty-seven years old and earning $ 21,193 annually.
¶6 The circuit court found that the total value of the parties' assets subject to property division was $ 368,340.36 and the total value of the parties' liabilities was $ 271,136.51. The court awarded Troy assets valued at $ 315,685.43 and assigned him liabilities totaling $ 267,083.51. The assets awarded to Troy included the parties' marital residence, three automobiles, and three motorcycles. Sayuri was awarded assets valued at $ 52,654.93, including one vehicle, and was assigned liabilities totaling $ 4053. Thus, each party received a net value of $ 48,601.93, equal to one-half the net value of the marital estate.
¶7 The circuit court declined to award Sayuri monthly maintenance, as it concluded Troy was "under water" due to the debts assigned to him by the court's property division. Instead, the court ordered Troy to pay Sayuri 60% of the net amount of his quarterly commission bonuses until his sixty-third birthday. Sayuri now appeals, challenging the court's maintenance award and property division. Additional facts are included below.
DISCUSSION
¶8 The award of maintenance and the division of property in divorce actions are decisions entrusted to the discretion of the circuit court. LeMere v. LeMere , 2003 WI 67, ¶13, 262 Wis. 2d 426, 663 N.W.2d 789. As such, we will uphold the circuit court's decisions unless the court erroneously exercises its discretion. Hacker v. Hacker , 2005 WI App 211, ¶10, 287 Wis. 2d 180, 704 N.W.2d 371. We generally look for reasons to sustain a circuit court's discretionary decision. Steiner v. Steiner , 2004 WI App 169, ¶18, 276 Wis. 2d 290, 687 N.W.2d 740.
¶9 Nevertheless, a valid exercise of discretion is not the equivalent of unfettered decision-making. Hacker , 287 Wis. 2d 180, ¶10. Rather, a discretionary decision must be the product of a rational mental process by which the proper standard of law is applied to the relevant facts of record to reach a reasonable conclusion. Id. Here, for reasons set forth below, we conclude the circuit court erroneously exercised its discretion in setting Sayuri's maintenance award and in dividing the parties' property.
I. Maintenance
¶10 Maintenance awards are governed by WIS. STAT. § 767.56 (2017-18).[1] Pursuant to § 767.56, a circuit court may award maintenance payments to either party in a divorce action after considering a list of enumerated factors. McReath v. McReath , 2011 WI 66, ¶43, 335 Wis. 2d 643, 800 N.W.2d 399. These factors serve as the "touchstone of analysis" when a court sets maintenance, and they are designed to further two distinct objectives: support and fairness. LaRocque v. LaRocque , 139 Wis. 2d 23, 32-33, 406 N.W.2d 736 (1987).
¶11 The support objective is designed to provide the payee spouse with financial support at his or her pre-divorce standard of living: it "may not be met by merely maintaining the payee spouse at a subsistence level." McReath , 335 Wis. 2d 643, ¶44. The pre-divorce standard of living is measured by considering the lifestyle that the parties enjoyed in the years immediately before their divorce, as well as the lifestyle that they could have anticipated enjoying had they remained married. Id. The fairness objective is designed to ensure an equitable financial arrangement between the parties. LaRocque , 139 Wis. 2d at 33.
¶12 Here, the circuit court found that at the time of divorce, Troy had a monthly net income of $ 4792.37 and monthly expenses of $ 5504.38.[2] Sayuri had a monthly net income of $ 1324.54 and monthly expenses of $ 3065. Thus, Troy had a monthly deficit of $ 212.01 and Sayuri had a monthly deficit of $ 1740.46.[3] Further, the court found that "[Troy] would need to pay maintenance to [Sayuri] in the amount of $ 2,874.00 per month to equalize disposable income."
¶13 However, the circuit court declined to award Sayuri any monthly maintenance because it wanted Troy to have enough monthly income to meet his monthly financial obligations and avoid bankruptcy. The court supported its conclusion by observing that the "additional debts" Troy had been assigned as a result of the property division placed him "under water." Moreover, the court noted that "the parties did not lead a lavish lifestyle and were usually short or broke even with regard to income." Accordingly, the court ordered Troy to pay Sayuri 60% of his net quarterly commission bonuses instead of a fixed monthly maintenance award.
¶14 Sayuri argues that the circuit court's maintenance award failed to satisfy either the support or the fairness objectives of maintenance because it unfairly consigned her to live at a subsistence level while allowing Troy to continue living at his pre-divorce standard. In response, Troy contends that because Sayuri was assigned little of the marital debt and will receive a portion of Troy's quarterly commission bonuses, Sayuri is actually "in a much better position than Troy or in an even better position than she was during their marriage." For the reasons set forth below, we agree with Sayuri and conclude the court erroneously exercised its discretion in setting the maintenance award.
¶15 First, the circuit court's rationale for not awarding Sayuri monthly maintenance-i.e., that it wanted Troy to have enough income to meet his financial obligations-failed to consider the significantly different future standards of living the parties were consigned to as a result of the court's division of property. To explain, based upon the court's property division, Troy was able to continue living in the parties' marital residence-a 1200 square foot, two-bedroom home on 6.8 acres of land-while retaining his full base salary (and forty percent of any quarterly bonuses), and also keeping possession of three automobiles and three motorcycles. Sayuri, on the other hand, was left with no permanent residence, one vehicle, and a monthly salary approximately one-fifth that of Troy's base salary.
¶16 The unquestionable disparity between these two standards of living demonstrates that the circuit court's decision to not award Sayuri monthly maintenance award failed to meet both maintenance objectives. The support objective was not met because Sayuri's standard of living is far below what she enjoyed during the marriage. The fairness objective was not met because, in contrast to Sayuri's significantly decreased standard of living, Troy's standard of living has continued largely unchanged. This result is inequitable.
¶17 This inequity cannot be justified simply because, as implied by the circuit court, the parties both face a monthly financial deficit. The inequity persists because while both parties may face a monthly deficit, their respective deficits do not function equally. Troy's deficit is a function of him being assigned significant assets that should only gain value as he pays off their corresponding debts, while Sayuri's deficit is a function of her not having enough income to pay for her subsistence level needs, much less increase the value of the few assets awarded to her.
¶18 For instance, over one-quarter of Troy's monthly expenses is allocated for his $ 1366 monthly home-mortgage payment, which should steadily increase his equity in the parties' marital residence, which, again, he was awarded by the court's property division. Meanwhile, two-thirds of Sayuri's monthly expenses are allocated for her $ 2050 monthly rent, health insurance, food, and utilities payments-which, by themselves, eclipse her $ 1324.54 net monthly income. These expenses will not result in Sayuri accruing any equity, and, in fact, based on her monthly deficit, she may have to liquidate the assets she was assigned by the court's property division to cover these expenses. This unfairness is exacerbated by the fact that Troy is essentially using money that would have otherwise gone to Sayuri in the form of monthly maintenance to increase his equity.
¶19 Second, even without considering the different future standards of living to which the parties were consigned, the circuit court did not meet the fairness objective because it did not adequately explain why it did not equalize the parties' monthly financial deficits. There is a presumption that an equal division in parties' income is equitable. See LaRocque 139 Wis. 2d at 39. As indicated above, the parties both have a monthly deficit-Sayuri at over $ 1700 and Troy at over $ 200.[4] Given the presumption of equalization, the court's failure to explain why Sayuri must bear a monthly shortfall of approximately $ 1500 more than Troy constitutes an erroneous exercise of discretion and fails to satisfy the fairness objective of maintenance.
¶20 Third, the circuit court's maintenance award did not account for the variable and uncertain nature of Troy's quarterly commission bonuses, and thereby failed to satisfy both the support and fairness maintenance objectives in this regard. In fact, although the court noted that in the past Troy's annual gross commission bonuses had ranged from $ 18,000 to $ 40,000, it made no finding regarding the approximate net amount of these bonuses during the awarded maintenance period. Given that: (1) the gross amount of the bonuses is variable and uncertain; (2) the court's maintenance award stated that Troy was to pay 60% of the net amount of his bonuses to Sayuri; and (3) there is no finding in the record as to what the approximate net amount of his bonuses will be, it is impossible for this court to ascertain the likely actual amount of the maintenance payments Sayuri will receive. Even if we could approximate a net amount, it is undisputed that the bonuses are not guaranteed-so it is possible that in some quarters Troy's bonuses may total $ 0. If this occurred, Sayuri would end up receiving no maintenance payment, while Troy was able to enjoy the full benefit of his base salary, all without violating the court's order.
¶21 Notwithstanding these issues, even assuming a seemingly "best case" scenario for Sayuri-i.e., that she would receive 60% of the top-end estimate for Troy's gross annual commissions, $ 40,000-that still would equal only $ 24,000 in annual maintenance payments. This would be only $ 2000 per month, which falls $ 874 short of the $ 2874 the circuit court found would be necessary to equalize the parties' net monthly income. Once again, this inequity demonstrates the court's award failed to meet the fairness objective of maintenance.
¶22 Finally, the timing of the maintenance payments ignored Sayuri's monthly needs. Even assuming, for the sake of argument, that these variable and uncertain payments will be enough to cover the debts Sayuri will accrue in a three-month period, she must wait for the full three months to receive them. The circuit court did not explain how Sayuri is expected to pay her monthly living expenses during such periods of delay. This failure to consider Sayuri's ability to make monthly expense payments also contributes to the court's failure to satisfy the support objective of maintenance.
¶23 For all of the foregoing reasons, we conclude that the circuit court's maintenance award fails to meet both the support and fairness objectives of maintenance. Therefore, we reverse that part of the court's judgment and remand for the court to determine an amount of monthly maintenance that meets these two objectives.
II. Property Division
¶24 WISCONSIN STAT. § 767.61 governs the division of property at divorce. The statute then sets forth a presumption that all of the parties' property, subject to certain exceptions not relevant here, should be divided equally. Sec. 767.61(3). Sayuri argues that the circuit court erred in several respects when dividing the parties' assets and liabilities.
¶25 Sayuri first challenges the circuit court's treatment of a vehicle Troy bought for their adult son. It is undisputed that the vehicle was worth $ 3000 at the time of the divorce and was encumbered by an $ 8381 loan. It is also undisputed that the court assigned the $ 8381 debt to Troy, but it failed to assign the value of the car to either party. The divorce judgment does not contain any explanation for excluding the car's value from the property division, and Troy does not develop any argument that the value of the car was properly excluded. Instead, he argues that the court properly included the debt owed on the car in its property division. Troy's argument in this regard fails because it misconstrues Sayuri's argument. Sayuri does not simply argue the court erred by including the car's debt; rather, she argues the court erred by including the car's debt while also excluding its value.
¶26 We also note that the record contains no evidence supporting a rationale for excluding the value of the car from the couple's property division. For instance, there is no evidence in the record that the car is titled in the name of the parties' son. Thus, we conclude that the circuit court's failure to consider the value of this asset along with the debt in its property division was an erroneous exercise of discretion.
¶27 Sayuri next argues that the circuit court erred by awarding her a vehicle worth $ 17,103, while assigning the corresponding debt owed on the car, $ 21,900, to Troy. Sayuri contends that this approach constitutes an erroneous exercise of discretion because the court's decision essentially counted against her twice: the court relied on its assignment of this debt to Troy to reduce her property division, and then used the property division to deny Sayuri monthly maintenance. As a result, Sayuri contends that she was left with a marital property asset-her car-which will steadily decrease in value, whereas if she had been properly assigned the car's debt, she would have received an offset of either a different asset-for example, a larger portion of Troy's 401(k)-or a larger monthly maintenance award.
¶28 In response, Troy argues that Sayuri will benefit from the circuit court's award because she will not have to make monthly payments on the car by virtue of not being assigned its debt. While this is true in one sense, Troy's argument does not address the thrust of Sayuri's argument, which is that the court erred because it counted the value of her car's debt against her twice vis-à-vis the property division and maintenance award. In any event, we agree with Sayuri that the court should have included the debt corresponding to her car for the reason she advances-i.e., that if she was properly assigned the car's debt she would have been entitled to either monthly maintenance or a larger share of Troy's 401(k), as opposed to only an asset that will steadily decrease in value.
¶29 Finally, Sayuri argues that the circuit court erred by assigning Troy two liabilities in its division of property-a 401(k) loan worth $ 20,929 and a $ 23,785 credit card debt. In support, Sayuri notes that Troy did not list these debts when he filed his initial financial disclosure statement on August 8, 2016. Moreover, she points to a temporary order the court issued that same day that prohibited either party from "making any further debts against the credit of the other party." Consequently, Sayuri argues that these debts were incurred in violation of the temporary order and "should have been assigned to Troy without division."
¶30 Troy responds that he "is unaware of any statute or law that states that anything that is undisclosed at a temporary hearing in a financial disclosure statement cannot be later used or taken into account at a trial in a divorce proceeding." Troy's argument misses the mark.[5] The issue is not merely whether Troy failed to timely disclose these debts, but rather when and for what purpose Troy incurred these debts.[6] If Troy incurred the debts after the temporary order was issued for an improper purpose-and Troy points to no evidence in the record that suggests otherwise-they were not properly included in the circuit court's property division because they should have been Troy's sole responsibility, per the temporary order. Because the court failed to identify, as a factual matter, when and for what purpose Troy incurred these debts, the court's assigning of these two liabilities to Troy in its division of property constitutes an erroneous exercise of discretion.[7]
CONCLUSION
¶31 For the reasons set forth above, we agree with Sayuri that the circuit court's maintenance decision failed to meet both the support and fairness objectives of maintenance. We also agree that the court erroneously exercised its discretion regarding certain aspects of its division of the parties' property. We reverse and remand for the court to reconsider both maintenance and property division in a manner consistent with our decision.
By the Court. -Judgment reversed and cause remanded with directions.
Not recommended for publication in the official reports.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

In her brief-in-chief, Sayuri argues that the circuit court's finding that Troy had $ 5504.38 in monthly expenses was clearly erroneous because the circuit court double counted a $ 505 monthly car payment Troy listed in his financial disclosure statement. Troy does not respond to this argument, and we therefore deem it conceded. See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp. , 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979). In addition, we note that our independent review of the record confirms that Troy listed the $ 505 car payment as a monthly expense on his final financial disclosure statement. Thus, the court's finding that it had assigned Troy "an additional $ 505 car payment" was clearly erroneous. Accordingly, we have subtracted $ 505 from the court's finding and use $ 4999.38 as the amount of Troy's monthly expenses for the remainder of this opinion.

The circuit court used the term "monthly deficit" to refer to the parties' net monthly income minus their monthly expenses-including expenses incurred as a result of the circuit court's property division. We follow suit.

As noted above, the circuit court erroneously calculated Troy's monthly shortfall at over $ 700, which would correspond to a difference in the parties' monthly shortfalls of closer to $ 1000 than $ 1500. We conclude that this difference is not material, as the court's failure to adequately explain why Sayuri must bear a larger shortfall than Troy constitutes an erroneous exercise of discretion regardless of which value is considered.

In addition to missing the mark, Troy's argument also ignores the financial disclosure requirements set forth in Wis. Stat. § 767.127(1), as well as the potential consequences for failing to abide by those requirements. See Wis. Stat. § 767.127(4). We also note that, were we to accept his position, the practical effect would be to make a temporary order's prohibition on parties incurring debt during the pendency of a divorce action meaningless.

Although Sayuri argues that the only issue regarding these two liabilities is when they were incurred, we note that the purpose for which they were incurred is also important. For instance, if Troy incurred these debts after the temporary order was issued for purely personal reasons (such as taking a vacation) the debts would be his sole responsibility. However, if he incurred the debts to pay a marital debt (such as a joint tax liability), then they would be properly considered in the property division.

Sayuri also raises an additional argument regarding possible tax consequences she may face if, due to a lack of monthly maintenance, she has to liquidate certain retirement assets. However, our reversal of the circuit court's maintenance award renders that argument moot.